N. A. Whittaker v. Commissioner.
Whittaker v. Commissioner
Docket No. 25592.
United States Tax Court
1951 Tax Ct. Memo LEXIS 272; 10 T.C.M. (CCH) 295; T.C.M. (RIA) 51085; April 3, 1951
N. A. Whittaker, pro se. W. E. Koken, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: Respondent determined deficiencies in income tax and 5 per cent negligence penalties as follows: 5%
Year
Deficiency
Penalty
1944
$2,906.48
$145.32
1945
2,872.41
143.62
However, at the hearing, respondent conceded that the deficiency *273 and penalty for 1944 should be reduced to: Deficiency
5% Penalty
$2,235.34.
$111.77
The questions presented are: (1) Did petitioner correctly report his taxable income in 1944 and 1945? (2) Is petitioner liable for 5 per cent negligence penalties under section 293(a), Internal Revenue Code, for 1944 and 1945? (3) Was the deficiency notice for 1944 timely? Findings of Fact During 1944 and 1945, petitioner, who resides at 4629 Gay Avenue West, Seattle, Washington, operated, as a sole proprietorship, a Seattle firm known as "Electronics Associates" which engaged in the wholesale and retail sale of ultra-violet ray equipment. During those years petitioner also engaged in some electrical contracting and other construction jobs on a small scale. He also had an interest in the British Columbia Frozen Food Lockers, Ltd., a Canadian corporation. Petitioner maintained three accounts in the National Bank of Commerce, Seattle, Washington, during 1944 and 1945. Petitioner's income tax returns for 1944 and 1945 were filed with the collector of internal revenue for the district of Washington, at Tacoma, Washington. The return for 1944 was filed *274 on March 13, 1945. Notice of deficiency in income tax for both years was mailed to petitioner on August 5, 1949. Petitioner maintained no books and records from which his business receipts for 1944 and 1945 could be determined, and petitioner's income tax returns for those years do not purport to show his gross business receipts or business expenses. Petitioner's total bank deposits during 1944 and 1945 as shown by the records of the National Bank of Commerce, with adjustment for identifiable loans and interaccount transfers conceded by respondent, were determined by respondent to constitute petitioner's gross business receipts for those years. Petitioner's total business expenses for those years were determined by examination of check stubs furnished by petitioner, after the investigating officer determined that the total of the cancelled checks and the total of the invoices furnished by petitioner each amounted to considerably less than the amount of business expenses as shown by the check stubs, and would have produced an unreasonable amount of net income and resulting tax. Petitioner did not deposit all of his 1944 and 1945 business receipts in his bank accounts. It was the *275 regular practice of petitioner to use cash funds which came into his business for purchases of equipment, and such cash funds were not deposited in or taken from his bank accounts, nor was any proper record kept of the amount of such purchases. Petitioner's records or returns do not reflect the amount of his opening and closing inventories for either of the years 1944 and 1945. Petitioner did not use inventories in determining the taxable income reported in his returns. In his income tax return for 1944 petitioner reported $2,570 received as a self-employed contractor, claimed specific deductions totaling $1,981, and reported a net taxable income of $589. In his income tax return for 1945 petitioner reported taxable income of $3,400 and claimed specific deductions totaling $5,037. Petitioner's gross business receipts for 1944 were at least $53,672.57, as determined by respondent. Allowable business expenses for that year totaled $43,023.59, and petitioner's adjusted gross income was $10,648.98, as determined by respondent. Petitioner's additional and unreported income for 1944 is shown by the following table: Adjusted gross income
$10,648.98
Less: Allowable deductions claimed on
return of $1981.00 (auto ex-
pense of $387.00 excluded), in-
cluded in arriving at adjusted
gross income
1,594.00
Net income
$ 9,054.98
Shown on return as filed
589.00
Additional income disclosed
$ 8,465.98
(Section 29.21, Regulations 111)
*276 Petitioner's gross business receipts for 1945 were at least $39,965.91, as determined by respondent. Allowable business expenses for that year totaled $27,294.09, and petitioner's adjusted gross income was $12,671.82, as determined by respondent. Petitioner's additional and unreported income for 1945 is shown by the following table: Adjusted gross income
$12,671.81
Less allowable deductions claimed on
return: Contributions
$ 52.00
Interest
71.00
Taxes
207.00
Losses
85.00
Depreciation
200.00
Alimony
1280.00
1,895.00
Net income
$10,776.81
Loss shown on original return
(1,437.00)
Additional income disclosed
$12,213.81
(Section 29.21, Regulations 111)
Borrowed money not deductible
$1000.00.
Car expenses, supervision and business costs, power and tools, and business insurance included in computation of adjusted gross income. The deficiencies in income tax in 1944 and 1945 were due in part to negligence and petitioner is liable for the 5 per cent negligence penalty for each year, as provided in section 293(a) of the Code. Opinion Petitioner, a sole proprietor of a firm engaged in the sale of ultra-violet ray equipment, and *277 a self-employed contractor, reported net income of $589 in 1944, and in 1945 he reported specific deductions exceeding his taxable income by $1,637. He kept no books. Respondent, computing petitioner's gross business receipts from his bank deposits to be in the amount of $53,672.57 in 1944 and $39,965.91 in 1945, and his business expenses from his check stubs to be in the amount of $43,023.59 in 1944 and $27,294.09 in 1945, determined that petitioner did not correctly report his taxable income, and determined deficiencies accordingly. In the absence of records, it was necessary and proper for respondent to determine petitioner's tax liability from bank deposits and other information available. Section 41, Internal Revenue Code; Louis Halle, 7 T.C. 245; affd. (C.A., 2nd Cir., 1949), 175 Fed. (2d) 500; certiorari denied, 338 U.S. 949. The burden of showing error in respondent's determination was on petitioner. This burden he has not met. The indications are, in fact, that petitioner's gross business income in 1944 and 1945 as determined by respondent from bank deposits alone, less identifiable loans and inter-account transfers *278 conceded by respondent, is understated. Petitioner himself admitted at the hearing that he received cash in his business which was not deposited, though he called such amounts small. Certainly petitioner has not furnished reliable evidence that his gross income was overstated by respondent. Petitioner's divorced wife, Marie A. Whittaker, testified that she loaned petitioner $2,400 in cash in 1944; his son, William H. Whittaker, testified that he loaned petitioner "over a thousand dollars," the "biggest part" of which was loaned in 1944 and 1945; another son, Howard Whittaker, testified he loaned petitioner approximately $600 in 1944 and approximately $1,500 in 1945. However, no notes evidencing such loans were ever introduced. Moreover, there was no showing that such loans, even if made, were ever deposited in petitioner's bank account, beyond the statement of Marie A. Whittaker that, "Well, he always did deposit the money he received, to my knowledge." On the record before us we must reject petitioner's contention that respondent's determination of his gross income must be reduced by the amounts of such alleged loans. Petitioner also assigns as error that respondent "failed to *279 be specific in monies claimed as profits other than to say bank deposits." We have already pointed out that respondent was entitled to use the bank deposit method in determining petitioner's gross income. It was not incumbent on respondent to prove the exact source of such deposits in order to determine that they constituted gross income. Rather the burden was on petitioner to show that such deposits did not constitute income and, as we have said, to show that respondent's determination was wrong. Carmack v. Commissioner (C.A., 5th Cir., 1950), 183 Fed. (2d) 1; certiorari denied, 340 U.S. 875; Hague Estate v. Commissioner (C.A., 2nd Cir., 1943), 132 Fed. (2d) 775; certiorari denied, 318 U.S. 787; Russell C. Mauch, 35 B.T.A. 617; affd. (C.A., 3rd Cir., 1940), 113 Fed. (2d) 555. As we have said, petitioner has wholly failed to meet this burden. In addition to his failure to show error in respondent's determination of his gross income, petitioner has also failed to show that his business expenses were in excess of the amounts allowed by respondent. The deputy collector of internal revenue who investigated *280 petitioner's income for the taxable years testified that he examined successively petitioner's cancelled checks, invoices, and check stubs, all stored in cartons without classification, in order to arrive at petitioner's business expenses. The check stubs furnished the largest total, and the deputy collector accordingly relied on them. Petitioner supplied no analytical tables, and it is apparent from the testimony and exhibits that respondent's agent did an enormous amount of work in establishing petitioner's deductions which should have been done by petitioner himself. At any rate, petitioner has not shown that respondent's determination was arbitrary. Actually, petitioner seems unaware of just how much respondent has allowed him in the way of business expenses. On brief petitioner asks for an allowance, apparently for each year, "in excess of Twenty Thousand ($20,000.00) Dollars for expenses in conduct of petitioner's business." Business expenses represented by check stubs which were allowed by respondent were, as noted above, $43,023.59 for 1944 and $27,294.09 for 1945. Petitioner contends that respondent erred in making no allowance for business expenses paid in cash. But petitioner *281 furnishes no proof of any specific items of this nature. Moreover, his testimony indicates that bills paid in cash were paid from business cash receipts. Such receipts were not, as we have pointed out, included by respondent in petitioner's gross income unless deposited. Petitioner also contends that respondent failed to make due allowance for business expenses paid by check for which no check stubs were prepared. However, petitioner stated that most of such checks were at the time of the hearing in Canada, and he introduced no checks into evidence. But even assuming that such checks had been introduced, it is obvious that the checks themselves would not indicate whether or not there were stubs covering them, or whether the amounts of such stubs had been allowed as expenses by respondent. Petitioner's selfserving and unsupported testimony on this question is certainly not sufficient to show error in respondent's computation. Petitioner assigns error in that respondent "erroneously did not allow petitioner's depreciation of inventory." However, neither petitioner in his returns, nor the agent in making his examination, used inventories in determining income. Furthermore, in the *282 absence of records, petitioner would be unable to use the accrual method of accounting, which is a necessary condition to the computation of income by means of inventories under ordinary circumstances. Regulations 111, section 29.41-2. Petitioner being on the cash basis, any so-called "reduction in inventory" does not represent a loss, but merely a disposition of assets on hand for which proceeds must be reported as income. Moreover, there is no evidence of any sort to show what goods petitioner did have on hand, their cost, or the amount to be used for any purpose material to this proceeding. Petitioner assigns error in that respondent "did not allow petitioner's uncollectible debts as credits." However, petitioner being on the cash basis, his uncollected debts have no bearing on his income. Petitioner introduced no evidence which would support any deductions for bad debts, nor does he specifically claim any bad debts. Petitioner assigns error in that respondent "did not allow the petitioner's loss on stocks." Neither the amount, cost or basis, or any other evidence to substantiate a stock loss is in evidence before this Court. Petitioner assigns error in that respondent "refused *283 to accept petitioner's purchases of materials black or gray market, said materials used in the cost of operating business by petitioner." Black market purchases were never the subject of any adjustment by respondent, so far as is indicated by the testimony and work sheets of the examining agent, or by the notice of deficiency. Respondent's method of determining petitioner's income and business deductions from bank deposits and check stubs could not have involved, it is plain, any such adjustment. After careful study of the record we reject petitioner's assignments of error as to respondent's determination of deficiencies for complete failure of proof. Louis Halle, supra. Respondent also asserted 5 per cent negligence penalties under section 293(a) of the Code, for the taxable years. Petitioner kept no books and he has not shown that the gross discrepancies between his reported income and his actual income as determined by respondent were not due in large part to his own negligence. The imposition of the penalties is sustained. At the hearing petitioner orally contended that the deficiency notice for 1944, mailed August 5, 1949, was not timely under section 275(a) *284 of the Code, which provides a three-year statute of limitations. Respondent thereafter, with leave of the Court, filed an amendment to the answer alleging that the notice of deficiency was timely under section 275(c), which allows a period of five years from the date the return is filed within which to issue the deficiency notice, where the taxpayer "omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return." Petitioner's oral motion was never reduced to writing and was therefore insufficient to raise an issue not previously before the Court. Rule 17, Rules of Practice before the Tax Court of the United States; M. C. Parrish & Co., 3 T.C. 119. But even if the issue had been properly raised, petitioner could not prevail. The record shows that petitioner omitted $10,648.98 from his 1944 return, which is in excess of 25 per cent of the gross income of $2,570 stated in the return. Since the notice of deficiency was mailed within five years from the date, March 13, 1945, petitioner's 1944 return was filed, the notice of deficiency was timely. Section 275(c), Internal Revenue Code *285 ; Regulations 111, section 29.275-1(a). Decision will be entered under Rule 50.